STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert J. MACEMON, Defendant-Appellant.

Supreme Court

*No. 82–1322–CR. Submitted on briefs June 2, 1983.—Decided July 1, 1983.*

(Also reported in 335 N.W.2d 402.)

For the defendant-appellant the cause was submitted on the briefs of *Mark Lukoff,* first assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *E. Gordon Young,* assistant attorney general.

LOUIS J. CECI, J. A jury found the defendant-appellant, Robert J. Macemon, guilty of first-degree sexual assault, in violation of sec. 940.225(1)(b), Stats. On November 24, 1981, the circuit court of Racine county, Honorable Dennis J. Flynn, sentenced Macemon to not more than twenty years' imprisonment.

On June 8, 1982, Macemon filed a motion to modify sentence, alleging, in part, that the proposed felony sentencing guidelines[1] were a "new factor" that should

---

[1] The felony sentencing guidelines originated when the Administrative Committee of the Courts obtained federal funding to conduct a study examining the concepts of sentencing guidelines and determinate sentencing. The Advisory Committee then developed a set of ranges of sentence for four felonies: robbery, armed robbery, burglary, and first-degree sexual assault. Guideline matrices were developed for each of the four felonies, reflecting factors determined to be pertinent to sentencing. The ranges were originally based on information concerning sentences imposed in Wisconsin trial courts for the period January 1, 1977, through June 30, 1980. In those cases information was obtained relating to three general factors: the offender's personal background, his criminal history, and the severity of the crime of which the offender was convicted. Under the guidelines, points concerning the latter two of these factors were to be totaled and applied on two

be considered by the court. Racine county had not adopted the felony sentencing guidelines. The issues presented are: (1) Whether evidence that the defendant's sentence was substantially more severe than the norm set by the guidelines constitutes a "new factor" that entitles him to a sentence modification hearing; and (2) whether the sentence must be modified because it was unduly harsh. The trial court concluded that the information in the guidelines was not a "new factor" and dismissed the motion.

This court accepted the certification of the defendant's appeal from the court of appeals. Because we conclude that sentencing guidelines do not supersede the sentencing court's discretion and do not constitute a new factor entitling a defendant to a sentence modification hearing, and because we believe the sentence imposed was not unduly harsh, we affirm the trial court's order denying the defendant's motion.

During the early morning hours of September 18, 1981, the defendant, Robert Macemon, accosted a car going into the parking lot of an Open Pantry store in Racine. J.Q., a young woman, was alone in the car. The defendant opened the car door and asked J.Q. for a ride home. (It was raining.) J.Q. agreed.

At the defendant's request, J.Q. first drove to a nearby Taco Bell, where the defendant purchased some food. The defendant then gave J.Q. directions concerning

corresponding scales on the matrix. The guidelines indicated the type of sentencing that had been imposed, i.e., probation or incarceration, by giving the percentage of offenders who were incarcerated for the same felony during the given time period. The average length of the sentences imposed for each offense was also stated.

These guidelines were implemented on a voluntary basis by circuit judges in four counties in July, 1981. In 1982, circuit judges in four other counties likewise agreed to use the guidelines experimentally.

which way to drive. Eventually, he directed her to drive into Tabor Sokol Park. The defendant then attempted to kiss J.Q. She immediately resisted, biting his tongue and pulling his hair.

The defendant then pulled a knife that was ten to twelve inches long and placed it on J.Q.'s neck. He directed her into a wooded area and ordered her to remove her pants. The defendant had J.Q. lie on the ground, and he placed the knife in the ground beside her. The defendant then had sexual intercourse with J.Q. After the assault was over, J.Q. drove off alone and reported the rape to the Caledonia Police Department.

On November 10, 1981, a jury rendered a verdict of guilty to the charge of first-degree sexual assault. The trial judge sentenced the defendant to not more than twenty years' imprisonment. The judge noted that twenty years was the maximum penalty for first-degree sexual assault. In explaining the sentence being imposed, he cited the defendant's history of problems with the law as a juvenile and as an adult. The judge stated that there was "an indication of significant involvement with and perhaps dependency upon chemicals, particularly alcohol." He noted that the crime for which the defendant had been convicted was a crime against a person. He cited factors to show the aggravated nature of the crime, including the fact that the defendant was on probation at the time the offense occurred. The judge noted that the victim was a stranger who was trying to help the defendant by giving him a ride home on a rainy night and that the defendant used a deadly weapon to carry out the assault.

On June 8, 1982, the defendant brought a motion to modify his sentence. The first basis of his motion was that at the time of the sentencing, the trial court was not informed of the proposed felony scoring guidelines. The defendant stated that under the guidelines, "only

37 percent of individuals with defendant's criminal history, and offense severity are incarcerated. The analytic sample of length of incarceration shows that the vast majority of sentences does not exceed ten years." As an alternative basis for his motion, the defendant asserted that the twenty-year sentence imposed (the maximum permissible sentence) was unduly harsh under the circumstances and constituted an abuse of discretion, under *State v. Wuensch,* 69 Wis. 2d 467, 230 N.W.2d 665 (1975).

The trial court denied the motion because of its determination that the information presented by the defendant did not constitute a new factor under Wisconsin law. The trial court discussed the sentencing guidelines, but rejected the contention that a trial court in a county not involved in the study should modify a sentence because the preliminary data from the study indicated that a substantial number of other courts in the state would have given a lesser sentence. The defendant appealed the order.[2]

---

[2] The order denying the motion to modify sentence was entered June 28, 1982. The defendant's notice of appeal was filed the same day. The state points out that the notice of appeal purports to be an appeal from both the judgment of conviction and the order denying the postconviction motion to modify sentence, and asserts that an appeal from the judgment of conviction would be untimely and, therefore, that part of the notice of appeal should be stricken. We disagree.

Section 809.30(1)(f), Stats., provides:

"809.30 Rule (Appeals in felony cases). (1) APPEAL OR POST-CONVICTION MOTION BY DEFENDANT. . . .

"(f) The defendant shall file a notice of appeal or motion seeking postconviction relief within 60 days of the service of the transcript."

Section 809.30(1)(h), Stats., provides:

"(h) The defendant shall file an appeal from the judgment of conviction and sentence and, if necessary, from the order of the trial court on the motion for postconviction relief within 20 days of the entry of the order on the postconviction motion."

I.

The legislature has vested a discretion in the sentencing judge, which must be exercised on a rational and explainable basis. A sentencing decision is reviewable by this court in the same manner that all discretionary acts are to be reviewed. *McCleary v. State*, 49 Wis. 2d 263, 276–77, 182 N.W.2d 512 (1971). "[T]here should be evidence in the record that discretion was in fact exercised and the basis of that exercise of discretion should be set forth." *State v. Hutnik*, 39 Wis. 2d 754, 764, 159 N.W.2d 733 (1968). In *State v. Tew*, 54 Wis. 2d 361, 367–68, 195 N.W.2d 615 (1972), this court enumerated some of the factors this court has recognized as properly considered in sentencing:

"A past record of criminal offenses, *Brown v. State* (1971), 52 Wis. 2d 496, 190 N.W.2d 497; a history of undesirable behavior patterns, *Triplett v. State* (1971), 51 Wis. 2d 549, 553, 187 N.W.2d 318; *Deja v. State* (1969), 43 Wis. 2d 488, 168 N.W.2d 856; the defendant's personality, character and social traits, *Waddell v. State* (1964), 24 Wis. 2d 364, 368, 129 N.W.2d 201; *Deja v. State, supra,* at 493; *State v. Morales* (1971), 51 Wis. 2d 650, 658, 187 N.W.2d 841; the results of a presentence investigation, *State v. Schilz* (1971), 50 Wis. 2d 395, 184 N.W.2d 134; *State v. Burgher* (1972), 53 Wis. 2d 452 at 457, 192 N.W.2d 869; the vicious or aggravated nature of the crime, *State v. Wells* (1971), 51 Wis. 2d 477, 187 N.W.2d 328; *State v. Schilz, supra,* at 402; the degree of the defendant's culpability, *State v. Schilz, supra,* at 402; the defendant's demeanor at trial, *State v. Schilz, supra,* at 403; the defendant's age, educational background and employment record, *State v. Cole* (1971), 50

The defendant's June 8, 1982, motion to modify sentence was timely under Rule 809.30(1)(f), since it was apparently filed with 60 days of the service of the transcript. The defendant then followed Rule 809.30(1)(h), by appealing from both the judgment and the postconviction order.

Wis. 2d 449, 184 N.W.2d 75; *State v. Schilz, supra,* at 402; the defendant's remorse, repentance and cooperativeness, *McCleary v. State* (1971), 49 Wis. 2d 263, 182 N.W.2d 512; *Finger v. State* (1968), 40 Wis. 2d 103, 113, n. 1, 161 N.W.2d 272; the defendant's need for close rehabilitative control, *McCleary v. State, supra,* at 289; and the rights of the public, *Embry v. State* (1970), 46 Wis. 2d 151, 157, 174 N.W.2d 521."

The rule in Wisconsin is that it is inappropriate for a sentencing court to make a change in an imposed sentence unless new factors are made known.[3]

"A trial court should not reduce a sentence on 'reflection' alone or simply because it has thought the matter over and has second thoughts. It must base its modification on 'new factors' brought to its attention." *State v. Foellmi,* 57 Wis. 2d 572, 582, 205 N.W.2d 144 (1973).

As we stated in *Rosado v. State,* 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975):

"[T]he phrase 'new factor' refers to a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all the parties."

The defendant contends that the data from the sentencing studies in other counties constitutes such a "new factor." We disagree. The results of the study do not amount to a "fact or set of facts highly relevant to the imposition of the sentence."

---

[3] A sentencing court may not reduce a sentence on mere reflection and must state adequate reasons for a reduction. *State v. Wuensch,* 69 Wis. 2d at 480. If it finds the sentence unduly harsh or unconscionable, the sentencing court may review the sentence within 90 days of imposition. *Jones (Hollis) v. State,* 70 Wis. 2d 62, 72–73, 233 N.W.2d 441 (1975). Thus, in the absence of a new factor, it is usually for the reviewing court to reevaluate the appropriateness of a sentence.

It is well established in Wisconsin that the mere fact of disparity in the sentences received by persons committing similar crimes does not establish denial of equal protection. *McCleary v. State,* 49 Wis. 2d at 272; *Price v. State,* 37 Wis. 2d 117, 154 N.W.2d 222 (1967) ; *Jung v. State,* 32 Wis. 2d 541, 145 N.W.2d 684 (1966).

"It is not the philosophy of modern criminal law that the punishment fit the crime alone and that for every violation of a particular statute there be an identical sanction. In light of the function of the law to deter similar acts by the defendant and others and to rehabilitate the individual defendant, it is essential that a sentencing court consider the nature of the particular crime, *i.e.,* the degree of culpability—distinguishable from the bare-bones legal elements of it—and the personality of the criminal." *McCleary* at 271.

*See also, Drinkwater v. State,* 73 Wis. 2d 674, 679, 245 N.W.2d 664 (1976) ; *Ocanas v. State,* 70 Wis. 2d 179, 187, 233 N.W.2d 457 (1975).

Accordingly, we conclude that the sentencing guidelines are not a new factor which entitles the defendant to a sentence modification hearing. The guidelines are voluntary only and were an experiment in the counties in which they were used. Moreover, in *State v. Hegwood* (No. 82–421), also decided today, this court held that a subsequent statutory change in the maximum sentence for a crime to less than that imposed on the defendant does not constitute a new factor the trial court must consider for possible sentence modification. Arguably, the situation in *Hegwood* presents a stronger case for a defendant's entitlement to a sentence modification hearing based on the existence of a "new factor" than the situation now before us. However, we conclude that neither case presents the sentencing judge with a new factor to be considered on a defendant's motion for modification of his sentence.

## II.

Having concluded that the sentencing guidelines do not constitute a new factor under *Rosado,* we next consider whether the sentence must be modified because it was unduly harsh. The standard of review is whether the trial court abused its discretion. *State v. Gibbons,* 71 Wis. 2d 94, 237 N.W.2d 33 (1976).

There exists a strong policy against interference with the discretion of the trial court in passing sentence. *McCleary v. State,* 49 Wis. 2d at 276; *Jung v. State,* 32 Wis. 2d at 548; *Deja v. State,* 43 Wis. 2d 488, 168 N.W.2d 856 (1969); *Harris v. State,* 78 Wis. 2d 357, 254 N.W.2d 291 (1977).

"An appellate court should not supplant the predilections of a trial judge with its own. Appellate judges should not substitute their preference for a sentence merely because, had they been in the trial judge's position, they would have meted out a different sentence." *McCleary* at 281.

"In reviewing a sentence to determine whether or not discretion has been abused, the court will start with the presumption that the trial court acted reasonably, and the defendant must show some unreasonable or unjustifiable basis in the record for the sentence complained of." *Elias v. State,* 93 Wis. 2d 278, 281–82, 286 N.W.2d 559 (1980).

When imposing a sentence, a trial court should consider the gravity of the offense, the character of the offender, and the need for protection of the public. *McCleary* at 274–76. The trial court discussed these factors and cited pertinent facts regarding the defendant and the crime. The judge summarized his reasoning as follows:

"Now given all the matters that have been addressed on your case, I make the following findings before sen-

tence itself is imposed. I make a finding that in your case a period of confinement is necessary in the state prison in order to protect the public from further criminal activity on your part. Your actions in the sexual assault were dehumanizing as to the victim and degrading, as to a person who not only had never done anything wrong to you, but a person who was reaching out in an effort to help you on a rainy evening. Further in terms of determining that a period of confinement is necessary, I make a finding that in my judgment, based on this act and all the information presented, I find that you are a dangerous young man at the present time, and if I did not utilize a disposition that included confinement in a state prison, it would be my judgment that you would very quickly be back in crime in this or some other community. Secondly, I make a finding that you are in need of rehabilitative treatment. I find that at the present time that the rehabilitative treatment that would be most effective in your case is that rehabilitative treatment that's available within the correctional system for the State of Wisconsin. I find also that you have not benefitted in the past from rehabilitative treatment that was made available to you essentially in a correctional setting such as at Wales, nor have you benefitted from less restrictive options available in the community such as supervision or probation. Lastly I make a finding that it would unduly depreciate the seriousness of this particular offense if a sentence of only probation were imposed. No one here has recommended probation, but that is one of the factors that I must consider and address when imposing a sentence that includes confinement to a state prison. For that reason I have touched upon it now. I make a finding that in your case a substantial sentence is called for, for the reasons I've listed here, but specifically given emphasis to the total culpability or responsibility that you bear for this act; the fact that the woman was not responsible under any theory that I'm able legitimately to evaluate and consider. Substantial sentence further is called for because of the aggravated nature of the sexual assault, the fact particularly that a weapon was used, and also substantial sentence is called for because of your past record in criminal behavior and in the failed treatment opportunities that have been provided for you."

The judge adequately explained his reasoning for imposing the sentence on the record. There is nothing in the record to indicate the trial court's sentencing decision was based upon improper factors. We can find no abuse of discretion. Accordingly, we affirm.

*By the Court.*—The order of the circuit court is affirmed.