State of Wisconsin, Plaintiff-Respondent,
v.
Robert J. Trokan, Defendant-Appellant.
No. 03-1431.
Court of Appeals of Wisconsin.
Opinion Filed: June 9, 2004.
Before Anderson, P.J., Nettesheim and Snyder, JJ.
¶ 1 NETTESHEIM, J.
Robert J. Trokan appeals pro se from an order denying his motion for sentence modification based on the law of new factors.[1] In the trial court, Trokan claimed that he suffered neurological damage as the result of a 1985 motorcycle accident, that the injury contributed to his criminal conduct in the instant case and in a 1986 Waukesha county case for which he had previously been sentenced, and that the injury condition was not known to him at the time of the instant proceeding and the earlier Waukesha county case. The trial court determined that the evidence of Trokan's neurological damage constituted a new factor, but that it did not frustrate the purpose of the sentence in this case. Therefore, the court denied Trokan's motion. We affirm.

HISTORY
¶2 The history of this case is not in dispute. On May 25, 1985, Trokan suffered various injuries, including a head injury, as the result of a motorcycle accident. During his hospitalization, Trokan was principally treated as an orthopedic patient, not as a neurological patient.
¶3 Shortly thereafter, on August 11, 1985, Trokan committed six offenses in Waukesha countytwo first-degree sexual assaults, kidnapping, aggravated battery, armed robbery and operating a motor vehicle without the owner's consent. Under a plea agreement, Trokan pled guilty to kidnapping, aggravated battery, and one of the sexual assault charges. The remaining charges were dismissed but read in for purposes of sentencing.[2] The Waukesha county court sentenced Trokan to a total of sixteen years in prison. Trokan was paroled from this sentence in July 1992.
¶4 That brings us to the present case. Approximately eight months following his parole, between February and March 1993, Trokan committed four new offenses in Washington countythree burglaries and arson. The information charged Trokan as a repeater on all four counts. Trokan pled guilty to the charges and was convicted as a repeat offender. On June 11, 1993, Judge Richard Becker sentenced Trokan to thirty-seven years in prison.
¶5 About eight and one-half years later, in November 2001, Trokan brought a postconviction motion pursuant to WIS. STAT. § 974.06 (2001-02)[3] seeking sentence modification under the law of new factors. The matter was assigned to Judge David Resheske.[4] The parties agreed to a bifurcated procedure under which Trokan would first present evidence in support of his claim for a new factor. Thereafter, if Judge Resheske determined that a new factor existed, Trokan would present additional evidence in support of his request for sentence modification.
¶6 At the evidentiary hearing, Trokan presented expert testimony from Dr. Paul Nausieda, a neurologist, and Dr. Michael McCrea, a neuropsychologist. Based on his examination of Trokan's hospital treatment records following the 1985 motorcycle accident, Dr. Nausieda testified that Trokan had been treated principally as an orthopedic patient, not as a patient who had suffered a head injury. Both Dr. Nausieda and Dr. McCrea opined that Trokan had incurred a head injury in the 1985 accident resulting in neurological trauma that substantially contributed to Trokan's criminal conduct both in the Waukesha county case and in the instant case. Because Trokan had not previously known of this injury, he argued that the information constituted a new factor warranting a sentence modification hearing.
¶7 In a written decision, Judge Resheske allowed that Trokan's head injury was a new factor. However, the judge further stated, "The more significant issue ... is whether or not that new factor frustrated the purpose of the original sentencing." After analyzing Judge Becker's sentencing remarks, Judge Resheske concluded that the new information did not frustrate Judge Becker's sentencing goals. Accordingly, Judge Resheske denied Trokan's motion for sentence modification. On motion for reconsideration, Judge Resheske confirmed his ruling. Trokan appeals.

DISCUSSION
¶8 In the proper exercise of discretion, a sentencing court may modify a criminal sentence upon a showing of a new factor. State v. Michels, 150 Wis. 2d 94, 96, 441 N.W.2d 278 (Ct. App. 1989). The defendant has the burden to demonstrate a new factor by clear and convincing evidence. State v. Franklin, 148 Wis. 2d 1, 8-9, 434 N.W.2d 609 (1989).
¶9 The law of new factors envisions a two-step process. Id. at 8. First, the defendant must demonstrate that there is a new factor justifying a motion to modify a sentence. Id. A new factor refers to a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of the original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties. Michels, 150 Wis. 2d at 96. On appeal, we review this question de novo. Id. at 97.
¶10 If the defendant has established a new factor, "then the circuit court must undertake the second step in the modification process and determine whether the new factor justifies modification of the sentence." Franklin, 148 Wis. 2d at 8. This question is addressed to the trial court's discretion. Michels, 150 Wis. 2d at 97.
¶11 Here, Judge Resheske accepted for purposes of Trokan's motion that Trokan was not aware of his neurological trauma at the time of the sentencing proceeding and therefore that information was not provided to Judge Becker. In making this determination, Judge Resheske said that Trokan had therefore established a "new factor." Based on Judge Resheske's use of the phrase "new factor," Trokan argues that Judge Resheske was obliged to move to the second step of the analysis and conduct a full sentence modification hearing.
¶12 However, we conclude that Trokan's leap to the second prong of the analysis is premature because a new factor consists not only of new information "not known ... at the time of original sentencing" but also "a fact or set of facts highly relevant to the imposition of sentence." Michels, 150 Wis. 2d at 96 (citation omitted; emphasis added). To satisfy this test, the defendant must demonstrate that the new information "frustrates the purpose of the original sentence. There must be some connection between the factor and the sentencingsomething which strikes at the very purpose for the sentence selected by the trial court." Id. at 99. See also State v. Carter, 208 Wis. 2d 142, 146, 560 N.W.2d 256 (1997). Thus, even though Judge Resheske said that Trokan had established a "new factor," the judge's written decision properly went on to analyze, as required by Michels, whether the revelation about Trokan's neurological trauma frustrated the purposes of Judge Becker's sentencing.[5]
¶13 Like Judge Resheske, we have examined the transcript of the sentencing proceeding before Judge Becker. As to the arson charge, the fire chief for the city of West Bend testified that Trokan had set three fires in the dwelling. The first fire was set in a manner that "took out the sub-flooring" creating a "delaying tactic so firefighters would come and the floor gives way or burned away, which puts firefighters into the fire, into the basement area, and fire departments then are going to concentrate their efforts on saving their personnel and letting the buildingthe fire to go [unchecked], which means more stuff is destroyed." In fact, this first fire achieved its purpose. The fire chief testified that when the firefighters entered the dwelling, the flooring gave way and they "went through the floor into the lower level of the structure." The chief further testified that the second fire in the stairwell was another delaying tactic designed to frustrate access to various parts of the building. The third fire was in a bedroom.
¶14 In his extended sentencing remarks, Judge Becker noted the violent nature of Trokan's Waukesha county convictions for kidnapping and first-degree sexual assault. Judge Becker observed that the arson offense in the instant case was equally serious and violent, putting the lives and safety of the firefighters at risk. Judge Becker stated:
The major factors that I am considering in setting the sentences that I am going to pronounce in a moment, is the protection of the public from Mr. Trokan. And that is just absolutely necessary. And it can't be done any other way than to have him locked up.
¶15 Addressing Trokan's need for drug and alcohol treatment, Judge Becker stated:
If there is to be any treatment for Mr. Trokan that's going to help so that when he gets out of prison he is not going to get right back in again within less than a year as he did the last time, that treatment can only come in a highly structured setting of a prison. Unless a substantial sentence is set here the public is going to have every right to wonder as to whether or not we consider such crimes to be serious, and we do.
¶16 Addressing the prospect of possible parole, Judge Becker said:
I also have in mind ... that there is discretionary parole. And that's what Mr. Trokan got on his other matter ... after a little over a third of the sentence.[6] I would certainly hope and expect that he would serve a lot more of this sentence than a third of it before getting paroled.
¶17 As we have noted, Judge Resheske held that the core question was whether the "new factor" of Trokan's neurological trauma "frustrated the purpose of the original sentencing." In addressing that question, the judge observed that Trokan's neurological injury constituted more of an explanation for his criminal conduct than an excuse. Judge Resheske also stated that whether Trokan committed the offense because of his injury, because of his drug and alcohol problem, or simply because he was a violent criminal "does very little to diminish the seriousness of those offenses." The bottom line for Judge Resheske was that regardless of the reasons for Trokan's criminal behavior, he remained a "danger to society" and "the public still needed to be protected." Judge Resheske concluded:
As succinctly pointed out by Judge Becker, that was his primary concern and any treatment that the defendant may be in need of had to come in a highly structured setting of the prison system. Whether that treatment was for drug and alcohol problems, mental health problems, or organic brain injury, the protection of the public was paramount in Judge Becker's mind.
¶18 Based upon this assessment of Judge Becker's sentencing rationale, Judge Resheske concluded that the new information about Trokan's neurological trauma did not frustrate the goal of the sentence fashioned by Judge Becker. Under our de novo standard of review, we agree. Trokan's past criminal behavior posed a real and ongoing danger to the public. As such, Judge Becker was principally concerned with protecting the public from future similar behavior. Only a lengthy prison sentence could satisfy that goal. The fact that we now know that Trokan suffered from a neurological injury at the time of his criminal conduct does nothing to allay the concerns expressed by Judge Becker.
¶19 It is important to bear in mind that Trokan's neurological trauma was not asserted as a defense to his criminal conduct. Rather, it was asserted as a mitigating factor as to the sentence. We question whether Trokan's purported "new factor" evidence would support that notion. After receiving Dr. McCrea's neuropsychological report, Dr. Nausieda provided a supplemental report stating that Trokan's impulse control was markedly altered by his neurological injury. If anything, that condition would appear to heighten, rather than mitigate, Judge Becker's concern about the serious and violent nature of Trokan's conduct. In addition, Trokan's lack of impulse control appears to contradict the fire chief's testimony, which described the sophisticated and calculated nature of the arson.
¶20 In summary, Trokan failed to establish a connection between his injury and the goals of Judge Becker's sentence or that the injury frustrated the purposes of that sentence. Michels, 150 Wis. 2d at 99. Since Trokan failed to meet his threshold burden to show a new factor, Judge Resheske properly declined to conduct a formal sentence modification hearing, the next level of the inquiry.[7]
¶21 We affirm the order denying Trokan's motion for sentence modification and the further order denying Trokan's motion for reconsideration.
By the Court.  Orders affirmed.
NOTES
[1] Trokan also appeals from an order denying his motion for reconsideration.
[2] Trokan's recitation of his Waukesha county convictions does not list aggravated battery. Instead, it lists armed robbery. Trokan's recitation is incorrect. We take judicial notice of the Waukesha county judgment of conviction and observe that it recites a conviction for aggravated battery and further recites that the armed robbery charge was among the charges that were dismissed and read in for purposes of sentencing.
[3] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[4] We take judicial notice that Judge Becker, the sentencing judge, had since retired.
[5] Trokan argues that the evidence to be presented at the second hearing would have addressed these considerations bearing on a new factor. However, Trokan's trial counsel did not represent the putative evidence in that light. Instead, trial counsel said that if Judge Resheske found a new factor based on the first hearing, the evidence at the second hearing would travel to the question of sentence modification. "And then we will at that point argue that Mr. Trokan's sentence should be modified." Later, trial counsel told Judge Resheske, "I think the first stage is for us to establish with the Court is that what we're dealing with is a new factor, because if it's not a new factor then of course there is no point in calling the other witnesses."

At the beginning of the hearing on Trokan's motion for reconsideration, Judge Resheske acknowledged that his use of the phrase "new factor" might suggest that Trokan had satisfied the first step of a "new factor" analysis. However, Judge Resheske went on to explain, as do we in this opinion, why the judge was required to also answer whether the new information frustrated the purpose of the original sentence.
[6] Here, Judge Becker was presumably referring to the parole granted to Trokan on the Waukesha county sentences.
[7] Both in the trial court and on appeal, Trokan at times appears to argue that the "new factor" also warranted modification of his Waukesha county sentences. However, this case concerns the Washington county sentence of Judge Becker, not the Waukesha county sentences. Moreover, Trokan has fully served the Waukesha county sentences and is no longer in custody under those sentences. WISCONSIN STAT. § 974.06 requires that a prisoner seeking sentence modification must be in custody and must address a sentence modification request to the court that imposed the sentence. Trokan's status fails to satisfy both of these requirements.