COURT OF APPEALS
DECISION
DATED AND FILED

May 19, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2026AP233**

Cir. Ct. No. **2025SC6004**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

ANNETTE M. FLYNN AND MATTHEW L. FLYNN,

PLAINTIFFS-APPELLANTS,

V.

BREWERS COMMUNITY FOUNDATION, INC.,

DEFENDANT-RESPONDENT.

---

APPEAL from orders of the circuit court for Milwaukee County: CAROLINA M. STARK, Judge. *Affirmed*.

¶1 PETRASHEK, J.[1] The Brewers Community Foundation 50/50 raffle is a popular feature at Milwaukee Brewers baseball games, awarding as a

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

prize one-half of the revenue from ticket sales to a participating fan with the remainder benefiting the Foundation and its community initiatives. A fan can participate in the raffle by purchasing a ticket for $2.00. The Foundation draws a winning raffle number during the game, which is announced through the public address system and displayed on the scoreboard. The fan with the ticket corresponding to the winning number receives the prize.

¶2 The raffle contest on July 7, 2023, did not go smoothly. Annette Flynn purchased ten raffle tickets while tailgating, and it is undisputed that she was the holder of the winning ticket that was initially selected. However, Annette was seated in a location with the scoreboard behind her. She did not see the winning number displayed, nor did she hear the winning number announced. Annette is not certain when she learned she held the winning ticket, but after becoming so informed she asserts that she asked an usher where to go and was directed to field level guest services.

¶3 The raffle's official rules at the time required the holder of the winning ticket to claim the prize at an identified 50/50 table on the loge level concourse, and the person was given "until the end of the top of the 7th inning (i.e., until the third out is recorded in the top of the 7th inning)" to do so. When Annette eventually reached the 50/50 table, the Foundation determined that Annette did not timely present the winning ticket, and a new winning ticket had been drawn and announced. The holder of that ticket received the prize payout.

¶4 Annette and her husband, Matthew Flynn, filed this small claims action, alleging they were wrongfully denied their winnings from the raffle

contest.[2]    Following discovery, the Foundation moved for summary judgment, which the circuit court granted.  The court concluded that the official rules for the raffle vested the Foundation with sole discretion to determine the winner of the prize and that the Foundation had reasonably exercised that discretion when it determined that Annette was not the official winner.  The court also remarked that the Flynns, whose only defense to the detailed timeline set forth by the Foundation was that it differed from their personal recollections, had not established a genuine dispute of material fact regarding the timing of Annette's arrival at the 50/50 table.[3]

¶5      The Flynns objected to the ruling, asserting among other things that the circuit court had erred by granting summary judgment while their motion to compel discovery was pending.  The court construed the objection as a motion for reconsideration and denied it with the observation that it was "well aware of the discovery issue cited in the motion when it granted the Defendant's summary judgment motion."  The Flynns now appeal pro se.

¶6      We review a grant of summary judgment de novo.  ***Estate of Paswaters v. American Fam. Mut. Ins. Co.***, 2004 WI App 233, ¶13, 277 Wis. 2d

---

[2]  The prize amount was approximately $13,000, but the Flynns sought only $10,000, the limit for small claims actions at the time.

[3]  The timeline presented by the Foundation, which used video evidence recorded during the game, posited that the winning number was displayed on the scoreboard at approximately 8:51 p.m., and the third out of the top of the seventh inning was recorded at approximately 9:12 p.m.  According to the Foundation, Annette could be seen leaving her seating area at approximately 9:10 p.m., she arrived at the field level guest relations desk at approximately 9:14 p.m., and she arrived at the 50/50 table on the loge level at approximately 9:15 p.m.  Because we agree with the circuit court that the official rules vest the Foundation with the sole discretion to determine the raffle winner under the circumstances here, we need not address whether there was a genuine dispute of material fact regarding the Foundation's proffered timeline.

549, 692 N.W.2d 299. Summary judgment is appropriate when the moving party is entitled to judgment as a matter of law and no genuine issue of material fact exists. WIS. STAT. § 802.08(2). At the summary judgment stage, all facts and reasonable inferences from those facts are viewed in the light most favorable to the nonmoving party. *Bohm v. Leiber*, 2020 WI App 52, ¶8, 393 Wis. 2d 757, 948 N.W.2d 370. Whether a genuine issue of material fact exists is itself a question of law for this court. *Hoskins v. Dodge County*, 2002 WI App. 40, ¶31, 251 Wis. 2d 276, 642 N.W.2d 213.

¶7 The Flynns generally argue the grant of summary judgment was in error because there were genuine issues of material fact and outstanding discovery requests relating to the timing of Annette's visit to the 50/50 table. The Flynns contend the video evidence provided by the Foundation is inconsistent with their observations and recollections, and their motion to compel sought the original video files with metadata; date, time and system information relating to the creation of each file; and the hash value of each video file to verify integrity. Their motion stated they intended to submit the files for "independent forensic analysis … to determine whether timestamps, encoding, or frame data have been altered." Based on the foregoing, the Flynns contend the exact sequence of events that occurred on July 7, 2023, is a matter for a jury to decide.

¶8 As the circuit court correctly recognized, the clear and unambiguous terms of the Foundation's official contest rules resolve this case. The Flynns

4

undisputedly agreed to the official rules by participating in the raffle.[4] *See Leitzke v. Magazine Marketplace, Inc.*, 168 Wis. 2d 668, 671-72, 484 N.W.2d 364 (Ct. App. 1992) (holding the elements of a contract were satisfied by participation in a game card contest). The rules vested the Foundation with "the sole discretion to determine whether a Participant with a winning Raffle ticket is the Official Winner of the Prize for the respective Drawing. Sponsor's decision concerning the eligibility of the Official Winner and the validity of the winning Raffle ticket shall be final and binding." After setting forth what was required of the person with the winning ticket—including timely presentation of the ticket at the designated table—the rules established that the failure to "claim the prize by the stated time and in the stated manner" would result in disqualification and forfeiture of the prize.

¶9     Under these rules, there is no genuine issue of material fact regarding whether the Flynns won the contest. They did not, because the Foundation concluded that Annette was late in presenting the winning ticket. The rules vest the Foundation with exclusive discretion to make that determination,

---

[4] Printed on the back of each ticket was the web address of the official rules, which stated: "By participating in the Brewers Community Foundation 50/50 Raffle … each participant ("Participant") agrees to be bound by these "Official Rules" and by the decisions of the Brewers Community Foundation, Inc. (collectively, the "Rules"), and the Rules shall be binding and final as to all matters related to the Raffle."

and they afford the Foundation with a limited right to be wrong.[5]  As a result, even if the Flynns' personal observations were sufficient to create doubt about the Foundation's timeline, and even if the Flynns were able to show errors in the reliability of the Foundation's video evidence, doing so would not create a genuine issue of material fact regarding whether the Foundation had appropriately exercised its contractual discretion to determine the contest winner.

¶10      The Flynns also argue that the Foundation's discretionary authority conflicts with aspects of Wisconsin law governing raffles.  Specifically, they argue the raffle here ran afoul of WIS. STAT. §§ 563.907(1) and 563.908(1), which establish, respectively, who can conduct a raffle and how a raffle is to be conducted.   The Flynns forfeited this argument by failing to develop it before the circuit court.[6]  *See **Schonscheck v. Paccar, Inc.***, 2003 WI App 79, ¶10, 261 Wis. 2d 769, 661 N.W.2d 476.  But even on the merits, we are unpersuaded that the official rules contravene any of the cited statutory provisions.

---

[5] Every contract carries with it a duty of good faith and fair dealing.  ***Kreckel v. Walbridge Aldinger Co.***, 2006 WI App 168, ¶20, 295 Wis. 2d 649, 721 N.W.2d 508. Accordingly, we stop short of endorsing a construction of the official rules that would permit the Foundation to reject winners for reasons extrinsic to the contractual requirements (personal animus against the winner, for example) or for patently unreasonable applications of those requirements. *See **Pruett v. WESTconsin Credit Union***, 2023 WI App 57, ¶44, 409 Wis. 2d 607, 998 N.W.2d 529 (observing that the discretionary powers under a contract must be exercised in good faith and for any purpose within the reasonable contemplation of the parties at the time of formation).  Deciding whether a winner arrived just before or just after the time period for claiming the prize expired is a matter plainly within the discretion afforded to the Foundation by the contract.

[6] The Flynns contend they did not forfeit their statutory argument because they consistently challenged the "enforceability of the rules" and the Foundation's "discretionary determination of the winner."  However, they do not direct us to anything in the appellate record in which they specifically raised statutory noncompliance.  General assertions are insufficient preserve an issue for review. *See **Bishop v. City of Burlington***, 2001 WI App 154, ¶8, 246 Wis. 2d 879, 631 N.W.2d 656 ("A litigant must raise an issue with sufficient prominence such that the trial court understands that it is being called upon to make a ruling.").

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.